**People of the State of Illinois, Plaintiff-Appellee, v. Robert Newman, Defendant-Appellant.**

**Gen. No. 49,610.**

First District, Fourth Division.

January 7, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

■■■■■■■■■■■■■■■

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward J. Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

The defendant, Robert Newman, was found guilty of burglary after a bench trial and was sentenced to the penitentiary for a term of not less than four nor more than twelve years. Defendant in his appeal contends that his confession was improperly admitted into evidence and that the remaining evidence alone was insufficient to support his conviction.

In essence the relevant facts are that on July 1, 1961, a Cadillac automobile which was reported stolen on June 16 from a garage at the rear of 415 South Central Avenue in Chicago, Illinois, was recovered partly dismantled from a burning garage at the rear of 3112 North Parkside in Chicago. Defendant was arrested at 12:30 a. m. on June 30, 1963, and at 11:20 that morning gave a signed statement to the police which stated in substance:

> On June 16, 1961, at about one o'clock in the morning I saw a 1961 Cadillac which I had watched previously, parked in an alley in the rear 500 block of South Central Avenue. The car doors were not locked. I opened the hood and short-wired it out, then I got in it and drove it to 3110 North Parkside and put it in the garage in the rear of this address, which I rented previously from Mrs. Crooks. The following day I started stripping this automobile. I took out the radiator, air conditioner, fenders, all the doors and glass. On June 30, 1961, 11:30 p. m. I pushed the stripped Cadillac out of the garage at 3110 North Parkside, into my sister's garage at 3112 North Parkside. . . . My nephew . . . came

over . . . in the morning and we started cutting up the car with the torch when the fire started. . . .

 Defendant moved at trial to suppress the confession on the ground that it was involuntary. In support of his motion defendant testified that he had been awake for approximately nineteen hours before his arrest and that he had been drinking steadily for approximately eight hours prior thereto; that after his arrest he was transferred to various police stations, but only for a brief period of time, and was then returned to the Shakespeare Avenue Station; [1] that his requests for water and use of the telephone were denied but that he did not request coffee; that he was not questioned about anything pertaining to the burglary until Detective Jablon arrived to interrogate him approximately twelve hours after his arrest; that after Detective Jablon began the interrogation defendant did not request the use of a telephone; and that his mind was "all right" except that he was tired and sleepy. No other evidence was introduced.

 A confession will not be deemed involuntary on the ground that at the time it was made defendant was tired. People v. Cox, 383 Ill 617, 50 NE2d 758. The only statute in effect at the time of defendant's arrest relating to the right of an accused to contact his family or attorney (Ill Rev Stats, 1961, c 38, § 736b) provided for civil damages or imprisonment against anyone denying a person in custody the right to contact an attorney and his family within twenty-four hours. (This section has been augmented and supplanted by the Criminal Code

---

[1] A "stop order" was in effect and his transfers apparently resulted from efforts to locate Detective Jablon, the officer who had the "stop order." Moreover, at the time of his arrest defendant gave a fictitious name.

of 1963.) [2] Defendant relies upon Escobedo v. State of Illinois, 378 US 478, Haynes v. Washington, 373 US 503, and People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33, as authority for his contention that his confession was involuntary and therefore inadmissible. The court in People v. Hartgraves, supra, stated at pages 379, 380:

As we read the Haynes case, the United States Supreme Court merely stated that the failure to warn a defendant and advise him of his right to remain silent, is an attendant circumstance "which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession."

. . . . . .

We do not, however, read the Escobedo case as requiring the rejection of a voluntary confession

---

[2] Ill Rev Stats, 1963, c 38, § 103-3, effective January 1, 1964, expressly grants to any person arrested the right to communicate with his family and attorney within a reasonable time after his arrest. It provides:

(a) Persons who are arrested shall have the right to communicate with an attorney of their choice and a member of their family by making a reasonable number of telephone calls or in any other reasonable manner. Such communication shall be permitted within a reasonable time after arrival at the first place of custody.

(b) In the event the accused is transferred to a new place of custody his right to communicate with an attorney and a member of his family is renewed.

Ill Rev Stats, 1963, c 38, § 103-8, also effective January 1, 1964, provides that:

Any peace officer who intentionally prevents the exercise by an accused of any right conferred by this Article or who intentionally fails to perform any act required of him by this Article shall be guilty of official misconduct and may be punished in accordance with Section 33-3 of the "Criminal Code of 1961" . . . as heretofore and hereafter amended.

because the State did not affirmatively caution the accused of his right to have an attorney and his right to remain silent before his admissions of guilt.

Therefore, these cases are distinguishable since in the instant case there is no evidence that defendant requested the assistance of counsel, that he was not advised of his constitutional right to remain silent or that the confession was induced by promises or threats. The decision of the court on the admissibility of a confession will not be disturbed unless it is manifestly against the weight of the evidence. People v. McFarland, 386 Ill 122, 53 NE2d 884. We find no reason to disturb the trial court's finding that the defendant's statement was voluntarily given.

█ While not pertinent to our finding in this case, we would point out that the State argued that even if the confession had been erroneously admitted, there was sufficient independent testimony to support the conviction. This argument has been specifically rejected in Lynumn v. Illinois, 372 US 528. The United States Supreme Court, quoting with approval from Payne v. Arkansas, 356 US 560, stated at page 537:

> "(T)his Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment."

Since the confession was properly admitted into evidence, the defendant's guilt was proven beyond a reasonable doubt.

The judgment of the trial court is affirmed.

Affirmed.

McCORMICK and ENGLISH, JJ., concur.